46 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce Randolph BORJESSON, a/k/a Randy Borjesson; Bryan
Borjesson, Defendant-Appellant.
 No. 93-30406.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 13, 1995.*
Decided Jan. 18, 1995.
 
 1
 Before: WRIGHT and BRUNETTI, Circuit Judges, and GONZALEZ,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Borjesson was convicted of one count of equity skimming and five counts of mail fraud, and was sentenced to 38 months in prison. He appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 I. Sufficiency of the evidence.[1]
 
 4
 A. Equity skimming.
 
 
 5
 Equity skimming is "the practice of purchasing one-to-four family dwellings subject to a loan insured by either the FHA or the VA and applying the rent receipts for personal gain rather than towards payment of the mortgages." United States v. Laykin, 886 F.2d 1534, 1537 (9th Cir.1989), cert. denied, 496 U.S. 905 (1990). When the evidence shows that a defendant did not use rents to pay mortgages, there is sufficient evidence that the defendant applied the rents for his own use. Id. at 1541. And when the evidence shows that a defendant used rents to pay other expenses, there is "strong evidence of equity skimming." United States v. Gaudin, 997 F.2d 1267, 1270-71 (9th Cir.1993), aff'd on reh'g, 28 F.3d 943 (9th Cir.) (en banc), cert. granted on separate question, 1995 W.L. 3907 (U.S. Jan. 6, 1995) (No. 94-514).
 
 
 6
 The evidence showed that Borjesson received significant rent payments. He made only 2 mortgage payments on 1 dwelling, and none on the other 13. Instead, he paid office expenses and withdrew cash. His failure to use the rents to pay the mortgages is sufficient evidence that he applied the rents for his own use. His use of the rents to pay office expenses and cash withdrawals is strong evidence of equity skimming. The evidence was sufficient to sustain his conviction for that crime.
 
 
 7
 B. Mail fraud.
 
 
 8
 Mail fraud requires a knowing use of the mail to execute a scheme to defraud. United States v. Beecroft, 608 F.2d 753, 757 (9th Cir.1979). This requirement is satisfied either by using the mail or by causing its use. United States v. Bohonus, 628 F.2d 1167, 1173 (9th Cir.), cert. denied, 447 U.S. 928 (1980), disapproved on other grounds by McNally v. United States, 483 U.S. 350 (1987).
 
 
 9
 Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used.
 
 
 10
 Pereira v. United States, 347 U.S. 1, 8 (1954).
 
 
 11
 The evidence showed that Borjesson rented a post office box in the name of Amstar. He ordered business cards bearing his name and the mailing address of Amstar. He distributed the cards to his tenants who testified that they sent rent checks to him in Tacoma and at the Amstar post office box. The evidence was sufficient to sustain his conviction for mail fraud.
 
 II. Admissibility of evidence of flight.[2]
 
 12
 "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." United States v. Harris, 792 F.2d 866, 869 (9th Cir.1986). Its probative value depends upon inferences drawn:
 
 
 13
 (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.
 
 
 14
 United States v. Felix-Gutierrez, 940 F.2d 1200, 1207 (9th Cir.1991), cert. denied, 113 S.Ct. 2332 (1993) (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir.1977), later appeal, 572 F.2d 506 (5th Cir.) (unrelated issues), cert. denied, 439 U.S. 847 (1978)).
 
 
 15
 When the trooper told Borjesson that "he was under arrest, [and that] he had two felony warrants through the FBI out of Anchorage for mail fraud," he started off at a quick pace, ignored verbal orders to stop, jumped off a bridge and onto a hill about fifteen to twenty feet below, slid down the hill, ran towards a marina, went behind a motor home, took his shirt off and ran away. The court did not abuse its discretion by admitting evidence of his flight because it strongly supported the requisite inferences.
 
 
 16
 III. Sentencing.
 
 
 17
 A. Specific offense level.
 
 
 18
 Section 2F1.1 of the Sentencing Guidelines governs the offense level for an offense involving fraud. It sets the base offense level at 6 and increases the offense level by 7 if the loss was between $200,001 and $500,000. U.S.S.G. Sec. 2F1.1(b)(1)(H) (June 15, 1988). The proper measure of a loss arising from an equity skimming and mail fraud scheme is the actual economic value of that which the defendant obtained from his victims. Harper, 32 F.3d at 1393. The value includes deficiencies caused by the defendant's actions. Id. at 1392.
 
 
 19
 Sellers testified that, when they sold their properties, their mortgage payments were current and they could have continued making the mortgage payments. Their testimony supported the court's finding that the deficiencies arose from Borjesson's crimes. The court properly included the deficiencies when it calculated the loss as between $200,001 and $500,000, and properly adjusted the specific offense level upward by 7 levels.
 
 B. Upward departure.[3]
 
 20
 An upward departure may be warranted for an offense involving fraud when the "[d]ollar loss ... does not fully capture the harmfulness and seriousness of the conduct." U.S.S.G. Sec. 2F1.1 n. 9. The dollar loss reflected only the harm suffered by the lenders. It did not reflect the suffering of the sellers. Nor did it reflect the harms suffered by the tenants. And the court departed upward only one level for the sellers' anguish and distress and only one level for the tenants' inconvenience. The court properly departed upward two levels for the sellers' anguish and distress and the tenants' inconvenience.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sufficient evidence supports a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979)
 
 
 [2]
 We review evidentiary rulings for an abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994)
 
 
 [3]
 We review departures from the Sentencing Guidelines under the three-part test established in United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc). This court determines whether: (1) the court had legal authority to depart; (2) the factual findings were clearly erroneous; and (3) the extent of the departure was unreasonable. Id. at 746-47