**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alan Keith HUNTER, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bart REED, Defendant–Appellant.**

Nos. 95–50602, 95–50614.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Nov. 20, 1996.

Derek W. Li, Deputy Federal Public Defender, Los Angeles, CA; Michael S. Meza, Santa Ana, CA, for defendants-appellants.

Lisa E. Feldman, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

Before: BRUNETTI, TROTT and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

## OVERVIEW

We consider in this case whether the ten-year sentence enhancement for committing a violent crime with a semiautomatic weapon applies when the weapon is unloaded and inoperable. We find it does and affirm the district court.

## FACTS

Defendants Alan Keith Hunter and Bart Reed robbed a credit union on February 15, 1995. Hunter was armed with a .380 caliber, SWD M–12 semiautomatic pistol. Reed was armed with a loaded and operable nine millimeter "Taurus" semiautomatic pistol. After they entered the credit union, Reed went directly to the account services area and pointed his nine millimeter Taurus at employee David Gaunt. Hunter proceeded to the teller window, demanded to see the manager, and jumped over the counter. Hunter and Reed then led the employees to the rear of the credit union where, at gunpoint, they

ordered the employees to lie on the floor. Hunter went to manager Barbara Raush's office, pointed his M–12 at her, and ordered her to take him to the vault. Reed and Hunter took $114,540 and fled the credit union. An off-duty deputy sheriff fired several shots at the defendants as they drove away. Hunter and Reed were arrested after pursuit by the police. Upon examination, the police determined the M–12 was unloaded and inoperable because the firing pin was pulled forward and bent.

Reed and Hunter pled guilty to conspiracy in violation of 18 U.S.C. § 371 and armed bank robbery in violation of 18 U.S.C. § 2113. They were also indicted for the use of a semiautomatic assault weapon during a crime of violence in violation of 18 U.S.C. § 924(c). The parties submitted this charge to the district court for determination on the basis of agreed facts. The parties stipulated that although Hunter knowingly used and carried the M–12 firearm and Reed saw him do so, both Hunter and Reed were aware the M–12 was unloaded and inoperable during the robbery. The parties agreed a government expert would have testified the M–12 firearm could be made operational by any one of four different methods and that the M–12 was designed to expel a projectile by the action of an explosive.

At the stipulated facts hearing, Hunter and Reed claimed the ten-year penalty imposed by 18 U.S.C. § 924(c) for semiautomatic weapons should apply only to loaded and operable weapons, and thus they should not receive a ten-year enhanced sentence for use of the M–12 during the robbery. Hunter and Reed characterized their argument as a motion for judgment of acquittal under Rule 29, Fed.R.Crim.P. The district court rejected this argument, holding that the ten-year sentence applied to Hunter and Reed for use of the semiautomatic M–12 even though it was inoperable and unloaded. The district court found Hunter and Reed guilty of violating 18 U.S.C. § 924(c) and sentenced them accordingly.

## ANALYSIS

In 1994, Congress amended 18 U.S.C. § 924(c) to add, among other items, an addi-

tional ten-year sentence for the use of a semiautomatic weapon during a crime of violence or drug trafficking offense. Hunter and Reed argue that in amending the statute, Congress did not intend to apply the enhanced ten-year penalty for semiautomatic assault weapons to inoperable and unloaded firearms. We reject Hunter and Reed's argument under the plain language of Section 924(c), case law, and legislative history.

*Statutory Construction of Section 924(c).*

We review the district court's construction and interpretation of a statute de novo. *United States v. Bailey,* 41 F.3d 413, 416 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2563, 132 L.Ed.2d 815 (1995). "We will affirm the denial of a Rule 29 motion unless we determine that no rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt." *United States v. Castaneda,* 16 F.3d 1504, 1511 (9th Cir.1994).

In construing a statute, we assume the legislative purpose is expressed by the ordinary meaning of the words used. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Absent a clearly expressed legislative intention to the contrary, the plain language of the statute is ordinarily conclusive. *Id.*

Section 924(c)(1) provides, in relevant part:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with

a firearm silencer or firearm muffler, to imprisonment for thirty years.

18 U.S.C. § 924(c)(1). Under 18 U.S.C. § 921(a)(30)(A)(vi), the SWD M–12 is specifically included among the defined list of semiautomatic assault weapons.

■ Nothing in the language of Section 924(c) or the definitions in Section 921(a) require the semiautomatic assault weapon to be loaded or operable. In fact, under 18 U.S.C. § 921(a)(3), the term "firearm" includes mere parts of a gun which alone are incapable of firing, such as the frame, receiver, muffler or silencer—clearly indicating Congress did not consider operability as an essential statutory element.

Had Congress intended the narrow construction Reed and Hunter urge, it could have expressly so provided. It did not, and it would be improper for us to introduce an additional requirement on our own. *Smith v. United States,* 508 U.S. 223, 229, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993).

■ Finally, as a matter of statutory construction, we "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corporation v. Miller,* 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988). Prior to the 1994 amendment adding the ten-year enhancement, many circuits had already held that the other enhancement provisions of Section 924(c) applied to unloaded and inoperable firearms. *See United States v. Gonzalez,* 800 F.2d 895, 899 (9th Cir.1986); *accord United States v. Martinez,* 912 F.2d 419, 421 (10th Cir.1990); *United States v. York,* 830 F.2d 885, 891–92 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). We presume Congress was aware of these cases when it enacted the 1994 amendment. *Goodyear,* 486 U.S. at 184–85, 108 S.Ct. at 1711–12. Accordingly, the only reasonable interpretation of Congress' omission of language limiting the ten-year penalty for semiautomatic assault weapons to operable and loaded firearms is that Congress intended the ten-year penalty to apply to unloaded and inoperable semiautomatic weapons as well.

*Judicial Construction of Section 924(c).*

Courts interpreting other provisions of Section 924(c) have reached the same conclusion. Two cases in this Circuit have held that an inoperable or unloaded gun is a "firearm" subject to the five-year sentence enhancement under Section 924(c), reasoning that "[t]he statute imposes no requirement that the gun be loaded or operable." *United States v. Gonzalez,* 800 F.2d 895, 899 (9th Cir.1986); *United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986). Similarly, we have interpreted the enhanced penalty portion of Section 924(c) imposing thirty years for use of a machinegun to apply to an unloaded machinegun capable of being rendered operable by transfer of ammunition. *United States v. Martinez,* 967 F.2d 1343, 1346 (9th Cir.1992).

Given that the five-year and thirty-year enhancement provisions of Section 924(c) apply to unloaded or inoperable weapons, it would make no sense to hold that the ten-year enhancement provision of the same statute does not apply to unloaded or inoperable weapons. *See Smith v. United States,* 508 U.S. at 233, 113 S.Ct. at 2056 (holding that a single provision of a statute should not be read in isolation, and "statutory construction ... is a holistic endeavor").

### Legislative History

■ Hunter and Reed claim this statutory interpretation is contrary to the statute's legislative history. Given the plain and unambiguous language of Section 924(c), we need not examine legislative history. "We may ignore the plain words used by Congress only in rare cases where the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Valencia–Andrade,* 72 F.3d 770, 774 (9th Cir.1995) (citations and internal quotations omitted).

Even if we chose to examine the legislative history, however, it clearly does not support Hunter and Reed's position. Hunter and Reed argue the legislative history shows Congress was concerned only with the violent death and injury produced by semiautomatic weapons, and thus the ten-year provision cannot apply to unloaded and inoperable

firearms. To be sure, Congress was concerned with "the carnage inflicted on the American people" by such weapons. H.R.Rep. No. 103–489, 103d Cong., 2d Sess. (1994), n. 4. However, Congress was also troubled by the coercion and fear caused by these more dangerous weapons, specifically pointing out that criminal gangs routinely use the apparent firepower of semiautomatic assault weapons for intimidation. H.R.Rep. No. 103–489, 103d Cong., 2d Sess. n. 9 (1994).

As the case at bar amply demonstrates, intimidation will be caused by a semiautomatic assault weapon whether the gun is loaded and operable or not. It was Hunter's perceived, not actual, ability to harm which caused the credit union employees to submit to his will. As the Tenth Circuit has noted:

> Unloaded firearms have the same effect on victims and observers when pointed or displayed, tending to intimidate, and also increase the risk of violence by others who may respond to the perceived danger represented by the (presumably) loaded gun. *See McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986) ("the law reasonably may presume that [a gun] is always dangerous even though it may not be armed at a particular time or place" (construing 18 U.S.C. § 2113)).

*Martinez*, 912 F.2d at 421.

Hunter and Reed argue Congress could not have intended the ten-year enhancement to apply here because the type of gun employed bears no relation to the quantum of fear produced. Logic and common sense dictate otherwise: an increase in a weapon's firepower is more likely to increase fear in equal measure. More importantly, there is no support for this theory in the legislative history. Contrary to Reed and Hunter's assertions, nothing in the legislative history of the 1994 amendment suggests Congress intended the ten-year penalty to apply only to loaded and operable semiautomatic assault weapons.

## CONCLUSION

The district court was entirely correct in its interpretation of the plain and unambigu-

ous language of 18 U.S.C. § 924(c). We affirm the convictions and sentences of Hunter and Reed.